**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

2012 DEC 20   PM 4: 31

DEPUTY CLERK

| | | |
|---|---|---|
| **SHAWN A. STEWART,** | § | |
| **Institutional ID No. 1109417,** | § | |
| **SID No. 5317811,** | § | |
| **Previous TDCJ No. 714430,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **1:11-CV-036-BI** |
| **JOAQUIN GUZMAN,** | § | **ECF** |
| **LIEUTENANT,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | **Assigned to U.S. Magistrate Judge** |

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the court upon Defendants' Motion for Summary Judgment and brief in support thereof, filed on May 30, 2012 (Doc. 59), as supplemented by additional exhibits, (Doc. 65), and Plaintiff Shawn A. Stewart's Response, (Doc. 67), Declaration of Opposition to Defendant's Motion for Summary Judgment, (Doc. 63), and Statement of Disputed Factual Issues, (Doc. 64).

Stewart filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on February 25, 2011. (Doc. 1). He claims that officials and medical staff of the French Robertson Unit ("Robertson Unit") of the Texas Department of Criminal Justice - Institutional Division ("TDCJ") were deliberately indifferent to his serious medical needs and health and safety, failed to protect him, and conspired against him; and that supervisory officials failed to appropriately train subordinates.

The court entered an Order Setting Evidentiary Hearing on April 5, 2011, (Doc. 12), setting an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) and 28 U.S.C.

§ 1915 and requiring TDCJ officials to provide authenticated copies of Stewart's records relevant to the claims in his complaint. The hearing, which was reset, took place on June 9, 2011. Stewart appeared and testified in his own behalf. He consented to having the United States magistrate judge conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c) in his complaint.

The court reviewed Stewart's complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, and entered an Order to Dismiss in Part and Order to File Answer or Other Responsive Pleading, (Doc. 22) and a judgment entered in accordance with that order, (Doc. 23), on June 15, 2011. Therein, the court found that Stewart had failed to state cognizable constitutional claims against Robert J. Eason, Cary J. Cook, Richard G. Leal, Gary J. Stanton, John Adkinson, Jason Edwards, Wendy Doan, Adrian L. Correll, Dennis Melton, Debra A. Caldwell, Myra L. Walker, Chief M. Gonzales, Edward L. Wheeler, Jimmy Betcher, Susan Wilburn, or Bonnie Young. (Doc. 22). The court ordered Stewart's claims against those defendants for deliberate indifference to his serious medical needs and health and safety, failure to protect, conspiracy, and deprivation of due process of law, based on their supervisory, official, or individual capacities, to be dismissed with prejudice, and ordered those defendants dismissed from the case. (Doc. 22).

The court further ordered that all claims against Defendants Joaquin Guzman, Patrick Martin, Cory G. Clinkenbeard, Jason Combs, Lee Wilson, Molly S. Cedillo, Johnny G. Brown, A. Wester, and Brandon Sarkisian,[1] except for Stewart's deliberate indifference to health and safety claims asserted against them, be dismissed with prejudice as frivolous. (Doc. 22). As to the sole remaining

---

[1]Sarkisian had been erroneously referred to in Stewart's complaint, (Doc. 1), and consequently in orders of the court as "B. Saskari." After notice from Stewart, (Doc. 34), Sarkisian's identification was amended by order of the court, (Doc. 36), and a judgment with regard to Sarkisian, (Doc. 37), was entered in line with that in the court's prior Order to Dismiss in Part and Order to File Answer or Other Responsive Pleading, (Doc. 22), in which Sarkisian had been referred to as "B. Saskari."

claim, Defendants Joaquin Guzman, Patrick Martin, Cory G. Clinkenbeard, Jason Combs, Lee Wilson, Molly S. Cedillo, Johnny G. Brown, A. Wester, and Brandon Sarkisian[2] were ordered to file an answer or other responsive pleading to Stewart's complaint. (Doc. 22). The remaining Defendants[3] filed a Consent to the Magistrate Judge and Answer, (Doc. 30), to Stewart's complaint.

Stewart alleges that the Defendants have been deliberately indifferent to his serious medical needs, arguing that the Defendants have delayed his access to emergency care and that supervisory officials failed to protect him by taking remedial actions. The court, having conducted a review of Stewart's complaint pursuant to 28 U.S.C. § 1915(d), finds for the reasons discussed below that regarding Stewart's claims for deliberate indifference to his health and safety against Joaquin Guzman, Patrick Martin, Cory G. Clinkenbear, Jason Combs, Lee Wilson, Molly Cedillo, Johnny G. Brown, A. Wester, and Brandon Sarkisian, Defendants' motion for summary judgment should be granted.

## I.   BACKGROUND

In his complaint and in his testimony, Stewart alleges that:

On July 8, 2009, he experienced an asthma attack in view of Joaquin Guzman, Patrick Martin, Cory G. Clinkenbeard, and Jason Combs at the security desk and entry to 4 Building. Stewart had recently been released from the hospital where he had been treated for an asthma attack. These Defendants did not seek emergency medical attention for him, despite the obvious need for

---

[2] As discussed above, for Sarkisian, a separate order, (Doc. 36), and judgment, (Doc. 37), were entered.

[3] Except Sarkisian, who filed his own substantially similar Answer, (Doc. 39), to Stewart's complaint. He has joined in his co-defendants' subsequent pleadings, including the Motion for Summary Judgment, (Doc. 59), now before the court.

assistance and the requests of a fellow inmate.  When the inmate asked to put Stewart on a cart to transport him to the infirmary, his request was denied by Clinkenbeard and Combs.

The inmate asked Officer Wright to alert officials that Stewart needed emergency medical treatment.  Wright made a phone call from the desk and left.  When he returned, he had a wheelchair and was accompanied by two other officers.  Stewart was transported to the infirmary, admitted, given emergency medical treatment, and stayed there for two days.

Stewart was instructed by medical care providers to immediately come to the medical department for oxygen when needed.  Guzman, Martin, Clinkenbeard, and Combs failed to immediately get arrangements for medical treatment when Stewart experienced an asthma attack.

On September 8, 2009, Stewart experienced another serious asthma attack.  Lee Wilson, who was assigned to the picket made a hand gesture at Stewart and refused to allow Stewart to exit the F-wing to go to the medical department.  Stewart was later admitted to the hospital.

Stewart experienced a severe asthma attack on October 22, 2009.  Molly S. Cedillo refused to allow Stewart to exit the F-wing to seek medical treatment.  An ICS (Incident Command System) was initiated.

On November 23, 2009, Johnny G. Brown did not allow Stewart to leave his wing in order to seek medical treatment.  Stewart was later admitted to the infirmary.

On January 4, 2010, while experiencing an asthma attack, Stewart attempted to get the attention of officers A. Wester and Brandon Sarkisian by flashing his cell lights off and on. Stewart was eventually transported to the hospital for treatment.

Defendants have disputed Stewart's allegations in their Motion for Summary Judgment. (Doc. 59). Their summary of events is as follows:

Stewart had an asthma attack on July 8, 2009. Defendant Combs, posted at a control desk, was prohibited from abandoning his post, so he could not escort Stewart to medical. Instead, Combs called medical and other control desks seeking help, and sought aid from passing colleagues. Clinkinbeard was one of these colleagues. Unable to move Stewart on foot, Clinkinbeard waited for a wheelchair that was on its way. Guzman and Martin were not in the vicinity during Stewart's asthma attack, and were not notified of it.

Wilson was supposed to be monitoring Stewart's section when Stewart had another asthma attack on September 8, 2009. Wilson has admitted that he was too distracted to take "a good look" at Stewart's section, and so did not notice the asthma attack.

Stewart had another asthma attack on October 22, 2009. According to defendants, "Investigators reviewed surveillance video of Stewart's housing area at the time he claims he was experiencing an asthma attack and being ignored by Cedillo. The video showed that Stewart was not in distress while under Cedillo's watch, nor did he ever attempt to get her attention."

Stewart had an asthma attack in front of the dining hall on November 23, 2009. Prior to the attack, Stewart asked Brown, who was stationed in a nearby hallway, to let him go to medical. However, Defendants claim that since Stewart was in no apparent distress and did not indicate that his ailment constituted an emergency, Brown waited until he could clear the crowded hallway of inmates on their way to eat before permitting Stewart to proceed.

Defendants assert that Wester sought help immediately when Stewart had an asthma attack in his cell on January 4, 2010, and that when Sarkisian responded to Wester's summons, Sarkisian took prompt action to transport Stewart to medical.

Stewart has disputed the veracity of Defendants' factual claims. (Doc. 63, 64, 67).

Stewart is seeking declaratory and injunctive relief and an award of punitive damages. He is suing defendants in their official and individual capacities.

## II.   ANALYSIS

### A. Official Capacity Claims

As to claims against Defendants in their official capacities, the Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Tex. Dep't of Crim. Justice, Institutional Div.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n.9 (5th Cir. 1991)). A state's sovereign immunity is not waived for claims pursuant to § 1983. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979)). Moreover, the State of Texas has not consented to this suit. *Id.* (citing *Emory v. Tex. State Bd. of Med. Exam'rs*, 748 F.2d 1023, 1025 (5th Cir. 1984)). Federal claims against state employees in their official capacities are the equivalent of suits against the state. *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996). The Eleventh Amendment immunity thus extends to TDCJ officers acting in their official capacity. *Aguilar*, 160 F.3d at 1054.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity noting that a state cannot confer authority on its officers to violate the Constitution or federal law. *See Aguilar*, 160 F.3d at1054. However, under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)).

### B. Qualified Immunity

"Qualified immunity protects public officers from suit if their conduct does not violate any

'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001) ).  This privilege is "an *immunity from suit* rather than a mere defense to liability." *Saucier*, 533 U.S. at 200-01.

In assessing qualified immunity, courts conduct a bifurcated analysis. *See, e.g.*, *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir.2004). First, the court must determine whether the facts, either as the plaintiff alleges or as proved without dispute, establish that the officer violated a clearly established constitutional right. *Linbrugger*, 363 F.3d at 540. This threshold question of whether a constitutional right has been violated has two sub-parts. The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Scott v. Harris*, 550 U.S. 372, 377 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201); *see also Sorenson v. Ferrie*, 134 F.3d 325, 328, 330 (5th Cir. 1998) ("For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances."). If no constitutional right has been violated, the inquiry ends and the defendant is entitled to qualified immunity. *Linbrugger*, 363 F.3d at 540.

However, if the defendants' actions violated a clearly established constitutional right, the court proceeds to the second step of the analysis, which asks whether qualified immunity is

appropriate, nevertheless, because the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins*, 382 F.3d at 537 (citations omitted). Where an officer makes a reasonable mistake as to what the law requires, that officer is entitled to immunity. *Saucier*, 533 U.S. at 205. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### C. Summary Judgment Standard

A motion for summary judgment may permit a court to resolve a lawsuit without conducting a trial. Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The proponent of the motion typically bears the burden of showing a lack of evidence to support his opponent's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To determine whether there are any material factual issues, the court considers applicable substantive law to define which issues are material and then considers the evidence relevant to those issues in the light most favorable to the nonmoving party. *Williams v. Kaufman County*, 352 F.3d 994, 1001 (5th Cir. 2003). A fact is "material" if it might affect the outcome of the suit under the  governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

Summary judgment is only appropriate when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact precluding judgment as a matter of law for the movant. *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003).  In determining summary judgments, all inferences are drawn in favor of the nonmoving party. *Austin*

*v. Johnson*, 328 F.3d 204, 207-08 (5th Cir. 2003). However, "the nonmoving party may not rest on the allegations or denials of [his] pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (quoting *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999)).

The court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, when ruling on a motion for summary judgment. *Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998). The party moving for summary judgment must first demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party satisfies this requirement by either (1) submitting evidentiary documents that negate the existence of some material element of the nonmoving party's claim or (2) merely pointing out the absence of evidence to support the nonmoving party's claim if the nonmoving party will bear the burden of proof on that claim at trial. *King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994). There is no requirement that the moving party support his motion with affidavits or other similar materials negating the opponent's claim. *Celotex,* 477 U.S. at 323.

If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Id.* at 324; *Priester v. Lowndes County,* 354 F.3d 414, 419 (5th Cir. 2004). If the moving party supports his motion with evidence, the nonmoving party cannot simply rely on conclusory legal allegations but must present affirmative evidence in order to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-55; *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir.2007) (holding that the nonmovant cannot satisfy his summary judgment burden "with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.")(internal quotation marks and citations omitted); *Clark v. America's Favorite*

*Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (holding that unsupported allegations, affidavits, or depositions merely setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir.1999).

When, as here, the defendants have asserted qualified immunity in a summary judgment motion, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir.2010). When a government official pleads qualified immunity, the plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct". *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir.2008) "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir.2002).

To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir.2003) (citation omitted). Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist.

*Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir.1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995); *see also Scott*, 550 U.S. at 380:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. FED. RULE CIV. PROC. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Although the plaintiff proceeds pro se, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir.1992).

**D. Deliberate Indifference Standard**

In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

It is well settled that the Eighth Amendment to the Constitution protects inmates from "conditions so serious as to deprive [them] of the minimal measure of life's necessities." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). In the context of medical care, or lack of care, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain or care repugnant to the conscience of mankind. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). Not every claim of inadequate or improper medical treatment is a violation of the Constitution. *Estelle*, 429 U.S. at 105-07. In order to state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. "To violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind." *Hall v. Thomas*, 190 F.3d 693, 698 (5th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A complainant must show that a prison official's state of mind was "one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834. "The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the jail officials were actually aware of the risk, yet consciously disregarded it." *Lawson v. Dallas County,* 286 F.3d 257, 262 (5th Cir. 2002). Thus, the prison official must "know of and disregard [the] excessive risk to inmate health or safety." *Hall*, 190 F.3d at 697 (citations and brackets omitted). Moreover, "the facts underlying a claim of 'deliberate indifference' must *clearly evince* the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (citing

*Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981)). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.*

The deliberate indifference requirement is more than mere negligence in failing to supply medical treatment. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Hall*, 190 F.3d at 697 (citing *Estelle*, 429 U.S. at 105). Neither "'negligence, neglect or medical malpractice'" gives rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (citing *Johnson*, 759 F.2d at 1238). "[N]egligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action." *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993). A negligent or "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105-06. While inadequate treatment "may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). Thus, mere "negligence is insufficient to support a finding of liability"; a plaintiff must show that the Defendants were "deliberately indifferent." *Adames*, 331 F.3d at 514.

Deliberate indifference is also more than disagreement between patient and doctor as to the appropriate treatment, except in exceptional circumstances. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (absent exceptional circumstances, a prisoner's disagreement with his medical treatment is not actionable under § 1983). Moreover, "[u]nsuccessful medical treatment does not give rise to a § 1983 cause of action." *Varnado*, 920 F.2d at 321 (citing *Johnson*, 759 F.2d at 1238); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Rather, to show deliberate indifference to his serious medical needs, a plaintiff must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d at 756 (quoting *Johnson*, 759 F.2d at 1238). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos*, 41 F.3d at 235 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir.1993)).

## E. Application

As Defendants here are state employees who were acting in their official capacities, *Aguilar*, 160 F.3d at 1054, and were not implementing any unconstitutional policy, *Oliver*, 276 F.3d at 742, any claims against them in their official capacities fail. In their Motion for Summary Judgment, (Doc. 59), Defendants have pleaded qualified immunity in response to Stewart's Eighth Amendment deliberate indifference claims against them in their individual capacities, and have supplied sworn affidavits supporting their versions of what transpired during Stewart's asthma attacks. Stewart has disputed Defendants' version. (Docs. 63, 64, 67). However, by pleading qualified immunity, Defendants have shifted the evidentiary burden onto Stewart. *Brown*, 623 F.3d at 253. Along with his own allegations as contained in filings with this court, grievances in which he made those same allegations, and his own testimony, the only evidence Stewart has supplied consists of unsworn statements from fellow inmates; this is insufficient to meet his evidentiary burden. *Johnston*, 14 F.3d at 1060; *see also Scott*, 550 U.S. at 380. As Stewart has not provided a sufficient evidentiary basis for his Eighth Amendment claim against Defendants, his claim does not survive the threshold element of the qualified immunity analysis. *Id.* at 372. Therefore, Stewart's claims against all of them in their individual capacities do not survive Defendants' Motion for Summary Judgment.

### III.   CONCLUSION

Having considered Stewart's allegations in his complaint, the supplements to his complaint, and his testimony, the court finds that Defendants' Motion for Summary Judgment should be granted, and that summary judgment should be entered in favor of the Defendants on the sole remaining claim in this matter.

**IT IS**, **THEREFORE**, **ORDERED** that Defendant's Motion for Summary Judgment filed on May 30, 2012 (Doc. 59), is **GRANTED**.

Summary judgment shall be entered in favor of Defendants Joaquin Guzman, Patrick Martin, Cory G. Clinkenbeard, Jason Combs, Lee Wilson, Molly S. Cedillo, Johnny G. Brown, A. Wester, and Brandon Sarkisian.

Any other pending motions are **DENIED**.


DATED this 20th day of December, 2012.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**